[L. A. No. 5945. Department Two.—May 20, 1919.]

In the Matter of the Estate of SARAH C. ROUNDS, Deceased.

[1] WILL—TIME OF TAKING EFFECT—GENERAL RULE.—Ordinarily a will speaks as of the time of the death of the testator or testatrix.

[2] ID.—LEGACY TO SISTERS AND BROTHER "LIVING"—CONSTRUCTION—EVIDENCE—LEGATEES LIVING AT TIME OF DEATH.—On this appeal wherein the whole question presented turned upon the interpretation of the word "living" as used in the clause of a will giving "To each of my sisters and brother living five hundred ($500) dollars," it is held the evidence does not indicate the intention of the

testatrix to use the word "living" as of the date of the execution of the will.

[3] ID.—WORDS OF SURVIVORSHIP — RELATION TO TIME OF DEATH.— Words in a will referring to survivorship, simply, relate to the time of the testator's death.

APPEAL from an order of the Superior Court of Los Angeles County refusing partial distribution in the matter of the estate of a deceased person. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hammack & Hammack and D. S. Hammack for Appellants.

Howard F. Shepherd, for Respondent Charles Lantz, Trustee, etc.

MELVIN, J.—This is an appeal by certain nieces and nephews of Sarah C. Rounds from an order refusing to make a partial distribution to them of the assets of her estate by reason of the fact that they are heirs, respectively, of her sister, Mary E. Barbour, and her brother, Hiram Edwards.

Mrs. Rounds died testate. She left certain legacies to charity and to nephews and nieces, and her will contained the following provision: "To each of my sisters and brother living five hundred ($500) dollars." At the time the will was executed she had two sisters and a brother living. Two of them, Hiram A. Edwards and Mrs. Mary E. Barbour, predeceased the testatrix. Appellants here, who are the sons and daughters of the deceased sister and brother of Mrs. Rounds, are, under section 1310 of the Civil Code, as they assert, entitled to take, as descendants, their proportions of the legacies of these predeceased beneficiaries under the will of Mrs. Rounds.

The whole question presented to this court turns upon the interpretation of the word "living" as used in the will. [1] Appellants cheerfully concede that ordinarily a will speaks as of the time of the death of the testator or testatrix, but they insist that in the present case the evidence indicates, conceding its admissibility, that the testatrix intended to use the word as applying to the time of the execution of the

testament. With this view we are unable to agree. The only witness whose testimony appears in the record is Mary C. Rodgers, a friend of Mrs. Rounds, who advised and assisted her in her business matters and who drew her will. Mrs. Rodgers made several rough drafts of wills for her friend before the one now in course of probate was executed. One of these contained the following provision:

"To each of my brothers and sisters living two hundred ($200.00) dollars. Their names Mrs. Mary M. Barber, Mrs. Helen Augusta McOmber, William J. Edwards and Hiram A. Edwards."

After the preparation of this rough draft William Edwards died and his sister then drew a pencil line through his name. Mrs. Rounds then told Mrs. Rodgers that she had one brother and two sisters who were still alive, and that she wanted provision made for them to the extent of five hundred dollars each. Mrs. Rodgers then wrote the clause of the will which is here in dispute, and she testified: "I do not think that Mrs. Rounds suggested the use of the word 'living' in this connection." [2] We do not see how this testimony indicates the intention of the testatrix to use the word "living" as of the date of the execution of the will. Surely, the mere elimination of the name of her deceased brother, William, from the rough draft would indicate no such intention unless it were accompanied by some direction that his share should be apportioned according to the statute of descents or in some similar manner ratably. The fact that Mrs. Rodgers used her own phraseology rather than that of Mrs. Rounds, is not at all significant, because by subscribing the instrument Mrs. Rounds adopted the language, and we are bound by the phraseology as written. [3] Words in a will referring to survivorship, simply, relate to the time of the testator's death. (Civ. Code, sec. 1336; *Estate of Alexander*, 149 Cal. 146, [9 Ann. Cas. 1141, 85 Pac. 308]; *In re Winter*, 114 Cal. 186, [45 Pac. 1063].) In many other jurisdictions this, too, seems to be the general rule. (40 Cyc., p. 1424; *McCoury's Exrs.* v. *Leek*, 14 N. J. Eq. 70, 76.)

The order from which this appeal is taken is affirmed.

Lennon, J., and Wilbur, J. concurred.