[Civ. No. 17490. Second Dist., Div. Two. Feb. 28, 1950.]

Estate of ALBERT MILTON DAVISON, Deceased. A. MIL-
 TON DAVISON, Petitioner and Respondent; LOS
 ANGELES ORTHOPAEDIC FOUNDATION, Legatee
 and Respondent, v. OSCAR H. SCHOCK et al., Appel-
 lants.

Vaughan, Brandlin & Wehrle and J. J. Brandlin for Appellants.

W. I. Titus for Petitioner and Respondent.

Joseph J. Burris for Legatee and Respondent.

MOORE, P. J.—By his will dated March 29, 1929, decedent bequeathed to his son Milton and to five friends $2,000 each. By the tenth paragraph of the instrument he devised the rest, residue and remainder of his property to respondent foundation concluding with the following clause.

"In the event that for any reason the portion of my estate that would go to said Los Angeles Orthopaedic Foundation shall not be entitled, under the law, to receive all of the rest, residue and remainder of my estate, then, and in that event, all of said residue remaining over and above the legal share to which said Los Angeles Orthopaedic Foundation is entitled, I give, devise and bequeath, in equal shares, share and share alike, to the persons named in this Will as legatees, to-wit: MARGARET LUCILE CECIL, MRS. C. W. HEATH, MRS. BETTY ZUANICH, MRS. GEORGE DAVIDSON, OSCAR H. SCHOCK, and ALBERT MILTON DAVISON, or to such of them as shall be living at the time of my death."

October 4, 1945, the testator published a codicil as follows:

"FIRST: It is my wish and I hereby direct that my funeral services shall be conducted in accordance with the ritual of the Jewish faith and that interment shall be in a Jewish cemetery.

"SECOND: I hereby substitute SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, a national banking association, as executor of my estate in lieu of Los Angeles First National Trust and Savings Bank.

"THIRD: I hereby reaffirm and republish my said Will unchanged except as herein expressly set forth."

Testator deceased June 28, 1948, and on February 21, 1949, his son Milton filed his petition for decree determining heirship under section 1080 of the Probate Code. In April appellants filed their "statement of Distributees . . . on claim of Heirship," in which they asserted that they "are the substitutional distributees" under decedent's will and each is "entitled to one sixth of so much of the residue of said estate as is in excess of one third of the distributable estate." By such statement they claimed $2,000 for each of such appellants under the specific bequest and also one-sixth for each appellant of all the residue of the estate in excess of one-third of the distributable estate. After a hearing upon the petition and the claims of appellants the court made findings that (1) Milton is the only surviving child of deceased and there is no other progeny; (2) appellants and Mrs. Cecil* are strangers in blood to the testator; (3) Milton and his five colegatees were named as legatees of $2,000 each; (4) the total valuation of the estate is $73,906.77; (5) after paying the specific bequests of $12,000, the residue of the estate, bequeathed to respondent foundation, a charitable corporation, is in excess of one-third of the distributable estate. From such facts the court concluded that (1) the foundation is entitled to receive the residue of the distributable estate except one-sixth of the remainder "over and above one-third of the distributable estate and son Milton is entitled to have distributed to him one-sixth of said rest, residue, and remainder of said estate over and above one-third of the distributable estate"; (2) contestants as strangers in blood to deceased are substitutional legatees and are not entitled to receive or take any portion of said estate in excess of the specific bequest to each of them as set forth in the will.

On this appeal appellants contend that (1) the law in effect at the date of the will gave the foundation one-third of the distributable estate; (2) the execution of the codicil does not alter the dispositions of the will; (3) the interpretation of the will by the trial court is not binding on this court.

Appellants assert that the will involved herein is to be interpreted and governed by section 1313† of the Civil Code which

---

*Mrs. Cecil did not join in the contest.

†(§ 1313.) "No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; and if so made, at least thirty days prior to such death such

in 1929 controlled charitable dispositions. However, in 1931 and 1937 the restrictions upon charitable bequests were embodied in a new statute, to wit, section 41 of the Probate Code.‡ The second paragraph of the latter section was added by amendment in 1943. The language of the section reveals a relaxing of the restraints upon bequests to charitable uses. The Legislature did not intend completely to outlaw a charitable gift even if it should exceed one-third of the estate, provided the will was published 30 days before the death of the testator. Even though a will is made within the 30-day period such gifts are not for that reason rendered invalid. They are in such event merely voidable ''at the instance of an aggrieved heir of a designated class.'' Section 41 confers no rights upon any person in addition to those specifically mentioned therein. Its provisions must not be ignored. (*Estate of Randall*, 86 Cal.App.2d 422, 426 [194 P.2d 709].) By virtue of its provisions the only person who can successfully object to the bequest to a charity is a spouse or consan-

---

devise or legacy and each of them shall be valid; provided, that no such devises, or bequests shall collectively exceed one-third of the estate of the testator, leaving legal heirs, and in such case a *pro rata* deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law.'' (Italics added.)

‡(§ 41.) ''No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or the laws of succession would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise, as aforesaid, have taken the excess over one-third, and if they do, a pro rata deduction from such devises and legacies shall be made so as to reduce the aggregate thereof to one-third of the estate. All property bequeathed or devised contrary to the provisions of this section shall go to the spouse, brother, sister, nephew, niece, descendant or ancestor of the testator, if and to the extent that they would have taken said property as aforesaid but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected.

''Nothing herein contained is intended to, or shall be deemed or construed to vest any property devised or bequeathed to charity or in trust for a charitable use, in any person who is not a relative of the testator belonging to one of the classes mentioned herein, or in any such relative, unless and then only to the extent that such relative takes the same under a substitutional or residuary bequest or devise in the will or under the laws of succession because of the absence of other effective disposition in the will.''

guineal relative designated by the section. By its language a son takes the property only to the extent he would have taken it but for the gift to the charity. Otherwise the estate passes as provided by the will and the devise of the entire estate to the charity shall not be affected. (*Ibid.*)

As if to leave nothing to speculation or interpretation the second paragraph of section 41 provides that nothing in the entire section shall be construed to vest any property bequeathed to charity in any person who is *not a relative of the testator* and of the class mentioned in the section unless and only to the extent that such relative takes the property under a substitutional bequest in the will or under the laws of succession because of the absence of other effective disposition in the will.

■ Applying the law of the Randall decision to the facts at bar we have a voidable gift of two-thirds of the residue of decedent's distributable estate. The share of such voidable devise that passes to Milton is that bequeathed to him by the residuary or substitutional clause. If there had been no such clause, there would be no effective disposition of the two-thirds residue by the will. After the valid, specific gifts to the son and his colegatees and the valid one-third gift to the foundation, appellants as strangers to the blood take nothing. Since Milton is a "descendant" of the testator (§ 41) he takes to the extent provided for him in the residuary clause while the balance goes "in accordance with his will," that is, to the Orthopaedic Foundation. (See *Estate of Davis,* 74 Cal. App.2d 357, 361 [168 P.2d 789] ; *Estate of Haines,* 76 Cal. App.2d 673, 676 [173 P.2d 693].) As a "descendant" son Milton was entitled to $6,000 out of the two-thirds of the residue ; but since appellants are not of the classes designated in the last sentence of the first paragraph of section 41, they take no part of the same two-thirds. The disposition to charity of the total estate is valid and enforcible as against strangers to the blood of the testator. (*Estate of Haines, supra.*)

### A WILL IS CONSTRUED BY THE LAW IN FORCE AT TESTATOR'S DEATH

■ Appellants' contention that the will should not be interpreted according to the law in effect at the death of the testator is contrary to reason and authority. ■ The conveyance of property by will is a privilege conferred upon man by society and it is neither enlarged by the wish of the testator nor restricted by desires of legatees or of legal heirs.

The Legislature has no inhibitions other than the Constitution. If it determines that a law operates unjustly upon a testator or upon any class of devisees it is free to remove the restraints or relax the restrictions. That is what the Legislature did in supplanting section 1313 of the Civil Code with section 41 of the Probate Code.

██ Decedent wrote his will in 1929. At that time his power to give to charity was limited to one-third of his distributable estate. In 1943, section 41 of the Probate Code was so amended as to permit a testator to give his all to charity so long as he complies with the provisions of that section. (*Estate of Randall, supra.*) In 1945, the codicil was executed.

There are two reasons why the will is interpreted according to section 41. (1) It is a ubiquitous rule that a will speaks from the death of the testator and is construed as operating according to the law then in force. (*Estate of Babb,* 200 Cal. 252, 255 [252 P. 1039]; *Estate of Rounds,* 180 Cal. 386, 387 [181 P. 638]; 1 Redfield on Wills (3d ed.) § 30.) The testamentary act anticipates that the testator's devises will pass only at the moment of his decease, and it presupposes that "he will have used the language of his will" with reference to the time of his death. (*Estate of Brickell,* 4 Cal.App.2d 54, 57 [40 P.2d 579].) The enactment of a statute after the publication of a will, changing the law in force at the date of the will, determines the construction of the document in the matter of the conveyances of properties. "To give the statute such a construction is not to make it retrospective in its operation, since it affects no rights vested before its passage." (*Wakefield* v. *Phelps,* 37 N.H. 295, 306.) The Legislature's power over a will is absolute until the death of its author. (*Strand* v. *Stewart,* 51 Wash. 685 [99 P. 1027].)

Coming to the language which is asserted to indicate decedent's intention that his will should be construed according to section 1313, in paragraph tenth he said, "In the event . . . the portion . . . that would go to . . . Foundation *shall* not be entitled, under the law, to receive all the rest . . . *then, and in that event,* all of said residue . . . I give . . ." He thereby disposed of his estate in the event his earlier declaration of a gift of all to the foundation might fail of realization on account of some possible occurrence that might prevent the consummation of his purpose expressed in the previous declaration. He was aware that the determination of the effect of the possible event would necessarily be made as of the date of his death and for that reason used words of futurity.

(2) The second reason why the will must be interpreted according to section 41 is the fact that in 1945 testator wrote and published his codicil. At that writing, section 41 had not only been enacted (1931) and twice amended of which he had notice, but without modifying a word relating to his bequests he "reaffirmed and republished" his will "unchanged except as herein expressly set forth."

In support of their contention that the will must be construed according to the law as it existed at the date of its execution, appellants cite *Estate of Wilson*, 65 Cal.App. 680 [225 P. 283]. That decision is distinguished by the language Mrs. Wilson used which referred to the existing laws. For example: If my son leaves no issue, then upon his death all my property shall be distributed *"as provided* by the laws" of California. When she used those words instead of "as the law may provide" there was very "apt and convenient language by which she could so have expressed herself by inserting after the word 'as,' the words 'may be,' 'will be,' " etc. (P. 687.) The court there approved of the use of the phrase "as the law may direct" to refer to some future law. So, in the instant will, when the testator said "in the event . . . the portion . . . *shall be reduced, or in the event* that . . . Foundation shall not be entitled, under the law, to receive all the rest, . . . then, and in that event . . . I give," the testator clearly anticipated possible changes in the law prior to his demise.

The language used by the testator indicates his intention to give all the residue to the foundation unless for some reason the law existing at the date of his death would prevent such disposition. His bequests to persons are specific. None of them shall share absolutely in the residue which he declared, "I give, devise and bequeath to LOS ANGELES ORTHO-PAEDIC FOUNDATION . . ." His only thought of his charity's not getting the residue is expressed in the clause: "In the event that for any reason the portion of my estate that would go to said . . . Foundation shall be reduced, or in the event that said . . . Foundation shall not be entitled, under the law, to receive all of the rest . . . of my estate, then and in that event, all of said residue remaining over and above the legal share to which said . . . Foundation is entitled, I give, devise and bequeath, in equal shares, share and share alike, to the persons named in this Will as legatees." Having so expressed his testamentary wish in 1929, testator lived each

day for 20 years with knowledge of his gift to the foundation, thus reiterating daily to the very last his expressed purpose. In the light of the constant knowledge of his charitable gift which must be imputed to him and of his express affirmance thereof, to annul it by construing it in the light of old section 1313 would deprive the testator *post mortem* of the right to devise his property to a worthy beneficiary and work a forfeiture on a legatee chosen by the testator himself. ▮ Gifts for charitable purposes are highly favored and bequests of such kind "will be liberally construed in order to accomplish the intent of the donor." (*Estate of Yule*, 57 Cal.App.2d 652, 654 [135 P.2d 386].)

Judgment affirmed.

McComb, J., and Wilson, J., concurred.